IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **JERRY M. PALMER, M.D.**, | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action Number |
| | ) 00-C-2717-W |
| **PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY**, *et al.*, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION ON THE APPLICABILITY OF ERISA**

Because this Court's jurisdiction turns on whether Plaintiff Jerry M. Palmer's claims under the two policies at issue are preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001 *et seq.*, the Court required the parties to undertake discovery and brief that limited issue. Discovery has been completed, and the briefs have been filed. For the reasons explained herein, the Court concludes that claims under the first policy are preempted by ERISA; but that the second policy is not an ERISA plan.

I. Facts

Sometime in 1980 or 1981, Dr. Jerry M. Palmer and Dr. Dorothy Reece formed a partnership specializing in pediatrics, Reece & Palmer. In 1981, Dr. Palmer spoke with his insurance agent, Bo Fields, about purchasing disability insurance for himself individually ("Policy 1"). Fields explained to Drs. Palmer and Reece that if they and one other worker took out an insurance policy with Defendant Provident Life & Accident Insurance Company, then Defendant would give each of them a 10% discount off their premiums, in exchange for allowing

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **JERRY M. PALMER, M.D.,** )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>**PROVIDENT LIFE & ACCIDENT** )<br>**INSURANCE COMPANY**, *et al.*, )<br>)<br>Defendants. ) | Civil Action Number<br>**00-C-2717-W** |

**MEMORANDUM OPINION ON THE APPLICABILITY OF ERISA**

Because this Court's jurisdiction turns on whether Plaintiff Jerry M. Palmer's claims under the two policies at issue are preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001 *et seq.,* the Court required the parties to undertake discovery and brief that limited issue. Discovery has been completed, and the briefs have been filed. For the reasons explained herein, the Court concludes that claims under the first policy are preempted by ERISA; but that the second policy is not an ERISA plan.

I. Facts

Sometime in 1980 or 1981, Dr. Jerry M. Palmer and Dr. Dorothy Reece formed a partnership specializing in pediatrics, Reece & Palmer. In 1981, Dr. Palmer spoke with his insurance agent, Bo Fields, about purchasing disability insurance for himself individually ("Policy 1"). Fields explained to Drs. Palmer and Reece that if they and one other worker took out an insurance policy with Defendant Provident Life & Accident Insurance Company, then Defendant would give each of them a 10% discount off their premiums, in exchange for allowing

Defendant to bill them at their office and have the office pay the premiums.[1]

Drs. Palmer and Reece, as owners-employees of Reece & Palmer, participated in this plan with Cherry Holeman, a non-owner-employee. The evidence shows that Drs. Palmer and Reece each reimbursed Reece & Palmer monthly for the cost of their insurance premiums. There is no evidence showing that Holeman reimbursed Reece & Palmer.

In the middle to late 1980s, Drs. Palmer and Reece and other doctors formed Tuscaloosa Pediatrics, P.C. (hereinafter called "Reece & Palmer/T.P." or "T.P."). In 1989, Greg Carlisle sold Dr. Palmer another individual disability policy issued by Provident ("Policy 2"). Policy 2 was also set up as a list bill policy, and Dr. Palmer and the other owner-employees reimbursed T.P. monthly. No non-owner employees participated in Policy 2.

II. Applicable Law

A. ERISA Preemption

ERISA governs employee benefit plans. The Eleventh Circuit has described the five statutory components of an "employee welfare benefit program" as (1) the existence of a plan, fund or program (2) established or maintained (3) by an employer, (4) to provide participants or their beneficiaries (5) disability benefits through an insurance policy. *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1214 (11th Cir. 1999); *see also Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982). An ERISA plan is created if "from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and the procedures for receiving benefits." *Donovan*, 688 F.2d at 1373.

However, a plan is not governed by ERISA where there are no employee participants. *See id.* To be an ERISA plan, "the plan must provide benefits to at least one employee, <u>not</u>

---

[1] This arrangement is called "list billing" or a "salary allotment plan."

including an employee who is also the owner of the business in question." *Slamen v. Paul Revere Life Ins. Co.*, 166 F.3d 1102, 1104 (11th Cir. 1999) (citing *Williams v. Wright*, 927 F.2d 1540, 1545 (11th Cir. 1991); 29 C.F.R. §2510.3-3(c)(1) (1998)) (emphasis added). Additionally, neither an owner nor a partner can constitute an "employee" for purposes of determining the existence of an ERISA plan. *Slamen*, 166 F.3d at 1105 (quoting *Peterson v. American Life & Health Ins. Co.*, 48 F.3d 404, 407 (9th Cir. 1995)). If a company pays the premiums for an owner's individual insurance, where no employees are covered, then the plan is not covered by ERISA. *Id.* at 1105-06.

Where an employer maintains one policy that includes employee participants and another policy that does not, then only the policy that includes employees is covered by ERISA; the other policy does not automatically come within the ambits of ERISA. *See id.*

A company "establishes or maintains" a policy where, for example, it collects money through payroll deductions and remits premium checks to the insurance company. In *Butero*, the Eleventh Circuit held that an employer consulting an insurance agent, selecting the terms of a group policy, completing an application form for the policy, soliciting enrollments from its employees, collecting money through payroll deduction, and remitting premium checks to the insurance company, constituted establishing or maintaining a plan. 174 F.3d at 1214; *see also Donovan*, 688 F.2d at 1373 (finding that acts or events that "record, exemplify or implement" the decision to establish a plan are direct or circumstantial evidence of the reality of such a plan).

When a policy originally covered both owner-employees and non-owner-employees, yet covers only owner employees at the time a claim is made (theoretically excluding the policy from ERISA coverage), the policy is nonetheless controlled by ERISA. *See Peterson*, 48 F.3d at 407.

In *Engelhardt v. Paul Revere Life Ins. Co.*, 139 F.3d 1346, 1351-52 (11th Cir. 1998), the

Eleventh Circuit held that a shareholder who was part of an ERISA plan could also be a beneficiary; therefore, his claims were covered by ERISA. As long as there are non-owner-employees participating in the plan, it qualifies under ERISA. *See Engelhardt*, 139 F.3d at 1351-52.

### B. "Safe-Harbor" from ERISA Coverage

There is a safe-harbor from ERISA if a group plan meets certain characteristics: (1) the employer does not make any contributions to the coverage; (2) participation by employees is voluntary; (3) the employer does not endorse the program and merely collects premiums through payroll deductions; and (4) the employer receives no consideration for administrative services connected with payroll deductions. *See* 29 C.F.R. 2510.3-1(j) (1998).

### C. ERISA Preemption and the Bad Faith Claim Under Alabama Law

In *UNUM Life Ins. Co. v. Ward*, 526 U.S. 358 (1999), the Supreme Court held that ERISA does not preempt a claim where either (1) "from a 'common-sense view of the matter,' the contested prescription regulates insurance," *Ward*, 526 U.S. at 367 (quoting *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 740 (1985)), or (2) a consideration of three factors results in finding that

> the regulation fits within the "business of insurance" as that phrase is used in the McCarran-Ferguson Act . . . "first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry."

*Id.* (quoting *Metropolitan Life Ins. Co.*, 471 U.S. at 743).

In *Hill v. Blue Cross Blue Shield of Ala.*, 117 F. Supp. 2d 1209, 1211-12 (N.D. Ala. 2000) (Acker, J.), the District Court for the Northern District of Alabama applied *Ward* and held that neither ERISA "super preemption" nor "defensive preemption" applies to Alabama's tort of bad

faith because bad faith is a state law claim regulating the business of insurance and is limited to the insurance industry.

### III. Analysis

#### A. ERISA And The Two Policies.

The parties do not dispute the fact that Policy 1 and Policy 2 are "plans, funds or programs," within th meaning or ERISA. They agree that Reece & Palmer/T.P. is an employer. They are in agreement that the relevant insurance policies provide disability benefits.

The evidence clearly shows that Reece & Palmer/T.P. established and maintainedboth policies. Reece & Palmer/T.P. engaged in acts that went beyond the mere intent to confer a benefit. It administratively maintained the disability policies, and it paid premiums through list billing.

Defendant has met its burden of proof in showing that Policy 1 is an ERISA policy because it covered Cherry Holeman, a non-owner-employee.

On the other hand, the undisputed facts show that Policy 2 never covered a non-owner-employee. The court must conclude, therefore, that Policy 2 is not an ERISA plan.

#### B. Plaintiff And The Safe Harbor.

The Court concludes that although Plaintiff has met his burden of establishing the second and fourth elements of the safe harbor defense to ERISA coverage with respect to Policy 1, he has failed to meet the first and third elements—that Reece & Palmer/T.P. did not make any contributions to the coverage and that it merely collected premiums through payroll deductions.

Indubitably, participation in Policy 1 was voluntary and Reece & Palmer/T.P. did not receive consideration for administrative services connected with the payroll deductions.

Further, Plaintiff proved that the doctors, owner-employees, reimbursed Reece &

Palmer/T.P. for premiums paid. He failed to show, however, that Holeman, who is not a physician and who is a non-owner-employee, reimbursed Reece & Palmer/T.P. Without such evidence, the Court must find that Reece & Palmer/T.P. may have made contributions to the coverage and that it did more than merely collect premiums through payroll deductions. Plaintiff has failed to meet his burden of proving otherwise.

### C. ERISA And The Bad Faith Claim

The Court concludes that ERISA does not preempt Plaintiff's bad faith claims.

Bad faith claims are specific to Alabama insurance law. The Court agrees with Judge Acker in *Hill*, that because the tort of bad faith in Alabama is limited to the insurance industry, neither ERISA "super preemption" nor "defensive preemption" applies to bad faith claims.

The Court's conclusions will be embodied in a separate order..

Done this 29th day of November, 2001.

_____
Chief United States District Judge
U.W. Clemon